JULIA E. WARNER *vs.* JULIA A. MORSE & others.

Norfolk.   January 30, 1889. — June 20, 1889.

Present: MORTON, C. J., FIELD, W. ALLEN, C. ALLEN, & HOLMES, JJ.

*Will — Codicil — Trust — Equitable Lien — Statute of Limitations.*

A testator, after bequeathing all his estate, consisting of personalty, to his wife absolutely, revoked by a codicil " so much of said legacy as gives to my said wife, N., my property forever, she to hold said property during her life.  I give and bequeath, at her decease, the said property to J. and her son, H., for their use and behoof forever."  *Held*, that the wife took a life estate, and J. and her son the remainder.

An equitable lien in real estate, purchased in the name of such testator's wife, and partly paid for with the funds of the estate, was *held* to be rightly established to the extent of such payment in favor of J., who had succeeded to her son's interest, upon a bill in equity to establish such a lien brought by her after the wife's death, and more than six years after the purchase; and the statute of limitations is no bar to such a bill.

FIELD, J.   This is a bill in equity, filed November 13, 1886, by Julia E. Warner, formerly Julia E. Baker, against the heirs at law of Nancy M. Johnson to establish a trust in, or an equitable lien on, land in Norwood.   George W. Johnson, who died on November 4, 1874, by his will gave all his property to his " wife, Nancy Morse Johnson, to have and to hold the same to her, her heirs, executors, administrators, and assigns, to her and their use and behoof forever " ; but by a codicil revoked " so much of said legacy as gives to my said wife, Nancy, my property forever, she to hold said property during her life.  I give and bequeath, at her decease, the said property to Julia E. Baker and her son, H. Willie Baker, for their use and behoof forever."

The single justice who heard the case was of opinion that Mrs. Johnson was entitled to a life estate in the property, and Mrs. Baker and her son Willie to the remainder ; and we think that this construction is correct.

It appears from the findings of fact which have been filed in the case, that George W. Johnson left only personal property, and that Otis Johnson was appointed administrator of his estate, with the will annexed.   The administrator, after paying the

debts and expenses of administration, would hold this property upon a trust, to pay the income to Mrs. Johnson during her life, and on her death to convey the principal in equal shares to Mrs. Baker and her son, Willie Baker. If the administrator delivered the property to Mrs. Johnson, she would hold it upon the same trust, and we infer that the administrator, after paying the debts and expenses, transferred the whole property or its proceeds to Mrs. Johnson.

It is found as a fact, that Willie Baker died, and that his mother was his "sole heir"; and we infer that this means that the interest of Willie, in some form, has become the property of his mother, who by marriage has taken the name of Mrs. Warner. It appears, also, that the administrator collected $700 "life insurance," to which Mrs. Johnson "was entitled upon the death of her husband," and that he, with the consent of Mrs. Johnson, mingled this with the assets of the estate, and charged himself with it, and settled his accounts with the assent of Mrs. Johnson and Mrs. Baker. The probate accounts are annexed to the papers, but they are not specifically referred to in the pleadings or in the facts found, or in the decree, and we doubt if they could be considered except by agreement of the parties. Both parties, however, in their briefs and at the argument, referred to these accounts, and we think that it was understood that they were to be considered by the court. They show that the sum of $734.52 was received by the administrator from insurance, and that he charges himself with this sum as property belonging to Mrs. Johnson. The accounts also show that money and property exceeding in amount the sum received from insurance, besides the $2,000 paid for the land in dispute, were transferred to Mrs. Johnson by the administrator from the assets of the estate.

If it be true that all the net proceeds of the assets of the estate have been in some form transferred to Mrs. Johnson, as they were all trust property, Mrs. Baker can follow the property, wherever it can be identified and whatever form it may have assumed, into whosesoever hands it may have passed, except into the hands of a purchaser for value without notice of the trust, unless by her conduct she has precluded herself from claiming it. The amount of the principal of this trust property, so

far as Mrs. Johnson has received it, is also a debt against her estate.

This bill is brought to recover the parcel of real estate, either on the ground that Mrs. Johnson held it in trust to be conveyed to the plaintiff after her death, or on the ground that it was purchased with money belonging to the trust. The bill also alleges, that, if the plaintiff is not entitled to have this real estate conveyed to her, she has an equitable lien upon it for the payment of such a sum of money as the court may determine.

This real estate was purchased by the administrator on May 1, 1875, of one George B. Talbot, who conveyed it in fee to Mrs. Johnson. The administrator paid for it $2,000 from the assets of the estate, and "it was not shown that the specific sum of $700 insurance money was used for the purpose." The purchase was made and the conveyance taken in the name of Mrs. Johnson, with the consent of Mrs. Baker, and upon an "oral understanding and agreement between" Otis Johnson, the administrator, and "Mrs. Johnson, that it was to be the property of Mrs. Baker on the decease of Mrs. Johnson." The real estate has been mortgaged by Mrs. Johnson to secure the payment of $200, which she received, and this mortgage is outstanding, and is admitted to be valid. Mrs. Johnson died on September 2, 1886, intestate, and her heirs, to whom the legal title to this real estate descended, are not purchasers for value. It is manifest that the whole claim of Mrs. Baker upon the estate of Mrs. Johnson cannot be settled in this suit, if there was trust property transferred to Mrs. Johnson besides what was used in the purchase of this land, because the allegations of the bill are confined to this real estate, and the personal representatives of Mrs. Johnson have not been made parties, but only her heirs at law. The principal difficulty is in determining, on the findings of fact, whether $1,300 or $2,000 of the trust property was used in the purchase of the real estate. If the personal representatives of Mrs. Johnson had been made parties, and the bill had been brought to recover the whole trust fund, and this exceeded $1,300, and if Mrs. Johnson's estate was solvent, it would perhaps make little difference whether $700 of the purchase money of the land was considered as derived from the money received from the insurance, or as derived from the trust fund, because

whatever of the principal of this trust fund Mrs. Baker does not receive out of the land is a debt against the estate of Mrs. Johnson, if Mrs. Baker is entitled to recover at all.   But in the decision of this suit, as it stands, it is important to determine whether the whole or only a part of the purchase money of the real estate was derived from the trust fund.

The oral agreement that the real estate should be the property of Mrs. Baker after Mrs. Johnson's death cannot be carried into effect on account of the statute of frauds.   It seems impossible, on any view of the facts, to maintain that Mrs. Baker is entitled to thirteen twentieths of the land by way of resulting trust.   It does not appear that the $1,300 and the $700 were paid for distinct aliquot parts of the land.   A trust resulting from a payment of a distinct portion of the purchase money of real estate arises, if at all, immediately on the payment of the money and the taking of the conveyance ; and in this case Mrs. Baker could not have obtained a decree for thirteen twentieths of this real estate immediately after the conveyance was made to Mrs. Johnson, because the legal title to the $1,300 was not then in Mrs. Baker.   It was trust money, to the principal of which she was entitled only after the death of Mrs. Johnson.

The general rule is stated in Lewin on Trusts, (7th ed.) 766, as follows : " Where a trust fund is traceable into land, and the fund constitutes a part only of the money laid out in the purchase, the court has usually given a lien merely on the land for the trust money and interest; but where the entire land is clearly the fruit of the trust fund, the *cestuis que trust* must upon principle have a right to take the land itself, whether the purchase was or not of the description authorized by the trust."   Mrs. Baker's claim, therefore, must be either for the whole of the real estate, on the ground that it was wholly purchased with trust property, or to an equitable lien upon it for the payment of so much of the trust property as was used in the purchase.

It is contended that she is precluded from maintaining her bill because she consented to the purchase of the real estate with the trust money, although under an oral agreement that the real estate should become her property on Mrs. Johnson's death.   It is manifest, on the facts found, that there was not any understanding or intention on the part of Mrs. Johnson or Mrs.

Baker, or the administrator, that Mrs. Baker should lose or release her interest in the property. They intended that the land should be hers on Mrs. Johnson's death. No one has been misled by the consent of Mrs. Baker to the investment in land. If a *cestui que trust*, being *sui juris*, consents that trust property be invested in a particular manner, this may preclude him from recovering damages of his trustee on account of the investment; but we see no reason why a beneficiary should be precluded from following the property, unless the consent is such as to show that he intended to abandon his right to the property. The administrator, Mrs. Johnson, and Mrs. Baker all intended that the real estate should be held according to the terms of the trust, and we think that Mrs. Baker has not lost her right to follow the trust property.

Although there is some reason for inferring from the probate accounts that considerably more than $700 was paid to Mrs. Johnson from the assets of the estate of her husband by the administrator, and that it was the understanding of the administrator, Mrs. Johnson, and the plaintiff that this real estate should be considered as purchased wholly out of the assets of the estate, yet these facts have not been found by the justice who heard the case; and as the evidence is not reported, we cannot say that he ought to have found them. The payments of considerable sums of money by the administrator to Mrs. Johnson appearing in the probate accounts may have been explained by other evidence. The justice says in the statement of facts found by him, that " I was of opinion that Mrs. Warner was entitled to a decree establishing an equitable lien on the Norwood estate in her favor to the amount of $1,300, that being the amount of the funds of the estate of G. W. Johnson (over and above the $700 belonging to Mrs. Johnson personally) to which Mrs. Warner would be and was entitled on the death of Mrs. Johnson." This is in effect a finding that $1,300 was the whole amount of the trust fund, and on this finding the decree is right. It is to be noticed that the plaintiff has not appealed from the decree. No claim has been made by the plaintiff for interest on the $1,300 since the death of Mrs. Johnson, perhaps because she has been in possession. The statute of limitations is not a defence. *Davis* v. *Coburn*, 128 Mass. 377. The decree

must be affirmed, with costs.  See *Pennell* v. *Deffell*, 4 DeG.,
M. & C. 372, 388; *Bresnihan* v. *Sheehan*, 125 Mass. 11; *National Mahaiwe Bank* v. *Barry*, 125 Mass. 20.  *In re Pumfrey*,
22 Ch. D. 255.                                    *Decree affirmed.*

*J. Everett*, for the defendants.

*S. H. Tyng*, ( *C. C. Mellen* with him,) for the plaintiff.